## Mastin E. Buck, Sheriff, etc., v. Thomas J. Mitchell.

1. HOMESTEADS—*Errors in Judgment by Commissioners to Assign—Evidence of Undervaluation to Show Fraud in Assigning.*—The mere fact that commissioners appointed by a sheriff to set off a homestead may have erred in their judgment as to the value of the property, would not justify a court of chancery in setting aside their proceedings. It is proper, however, upon the question of fraud to show that the property was greatly overvalued by the commissioners.

2. SAME—*Commissioners to Assign Should be Fairly Chosen—When Fraud in Appointment of may be Inferred.*—The law contemplates the selection of fair-minded, disinterested and competent men to act as commissioners to set off homesteads, and if a sheriff, in his zeal to collect a judgment, selects one man as a commissioner who is dependent on him for employment, another who has been frequently associated with the judgment creditor as an employe, and a third whose statements impeach his fairness, and these men place an excessive valuation upon the property, a purpose on the part of the sheriff, judgment creditor and commissioners to make the judgment debtor pay the execution regardless of his homestead rights may be legitimately inferred.

3. FRAUD—*How Proven.*—Questions of fraud are not to be determined solely by the denials and conclusions of the parties interested, but by the circumstances and the words and acts of the parties at the time, whereby the mind is laid bare and its fraudulent purpose exposed.

**Bill,** for an injunction. Appeal from the Circuit Court of Hamilton County; the Hon. EDMUND D. YOUNGBLOOD, Judge, presiding. Heard in this court at the August term, 1896. Affirmed. Opinion filed March 3, 1897.

T. M. ECKLEY, attorney for appellant.

A. M. WILSON, attorney for appellee.

MR. JUSTICE SCOFIELD DELIVERED THE OPINION OF THE COURT.

Appellee filed a bill in the Circuit Court of Hamilton county to enjoin the appellant, who was sheriff, from selling a certain tract of land belonging to appellee, under an execution issued on a judgment against appellee in favor of one C. G. Cloud.

Appellee was the owner of fifty-five acres of land, on which he, with his family, resided, and which he claimed as his homestead. The sheriff, upon receiving the execution, appointed Beard, Wycough and Neal as commissioners under the statute, to appraise the land and to set off appellee's homestead. Thirty-five acres were appraised at $1,000 and set off to appellee, and the sheriff levied upon the other twenty acres, and was proceeding to sell the same when the bill in this case was filed to enjoin him from so doing, on the ground of fraud in the selection and proceedings of the commissioners.

The chancellor, on the hearing, set aside the doings of the commissioners, and decreed that the temporary injunction should be made perpetual.

The mere fact that the commissioners may have erred in their judgment as to the value of the property would not justify a court of chancery in setting aside their proceedings. It is proper, however, upon the question of fraud, to show that the property has been greatly overvalued by the commissioners. Such proof has been made in this case. The evidence shows quite conclusively that the land is not worth more than fifteen dollars an acre, or but little more than $800 for the entire tract, while the part set off to appellee is worth less than $600.

The Constitution, Art IV, Sec. 32, provides that the legislature shall pass liberal homestead and exemption laws. But it would be folly for the legislature to obey this mandate of our organic law, if the courts are unable to maintain

Buck v. Mitchell.

the homestead right against the unfairness or fraud of avaricious creditors, or the excessive zeal of officers who seek to acquire a reputation for ability to collect judgments in defiance of the exemption laws.

The fact that property worth not more than $600 has been valued by the commissioners at $1,000 is calculated to arouse suspicion, and to call for a careful scrutiny of the transaction for circumstances indicative of fraud.

The evidence in this record shows that Beard, one of the commissioners, was the jailor of Hamilton county, appointed as such by appellant, but receiving his compensation from the county.   It further appears that Beard and the sheriff were on very friendly terms, and that Beard was frequently at the sheriff's office.

Neal, another of the commissioners, had been an employe of Cloud, the judgment creditor, from time to time during the two or three years preceding the appraisement of the property in question.   This employment, which in each instance was for the particular transaction only, related to the sale of real estate, to the oversight of Cloud's farm, or to any other work in which Cloud required assistance. Cloud seems to have reposed confidence in Neal and to have acted generally on that gentleman's judgment.

When Cloud was asked on the trial whether or not he had suggested the names of any of the commissioners to the sheriff, he answered, " I don't *think* I did."   He admits, however, that on the day before the appraisement he asked Neal if he could go on the following day, and that he understood, from some one, who were going as commissioners.

Appellee testified that Wycough, the other commissioner, told him that they, the commissioners, were instructed to set off twenty acres " regardless of what it was worth." This conversation was so closely connected with the appraisement as to be admissible as part of the *res gestae.* Wycough swore that he did not make such a statement. But the chancellor, who saw the witnesses, had a better opportunity to judge of their credibility than we have and we are disposed to abide by his judgment.

Wycough testified that he said to appellee, just as the appraisement was completed, " Mr. Mitchell, I am of the same opinion I was before; you had better fix this thing up; you have got too much property and land to keep from paying that debt." This statement clearly shows that Wycough had formed an opinion on the subject, and had probably expressed his opinion, on some former occasion, and was determined to assist the officer in compelling appellee to pay the judgment.

In another part of the conversation, Wycough asserted that Cloud was "all right." Cloud was a banker, and Wycough had developed from the larval state of a farmer into the chrysalis state of a money-lender, and each of them doubtless looked upon the other with favor.

Questions of fraud are not to be determined solely by the denials and conclusions of the parties interested, but by the circumstances, by the words and acts of the parties at the time, whereby the mind is laid bare and its fraudulent purpose exposed.

It is not necessary to hold that appellant or Cloud actually instructed the commissioners to defraud appellee, or that the commissioners actually agreed to do this nefarious act. The law contemplates the selection of fair-minded, disinterested and competent men to act as commissioners. If the sheriff, in his zeal to return an execution fully satisfied, selects one man as commissioner, who is dependent upon himself for his position, and another who has been frequently associated with the judgment creditor as an employe, and another whose statements impeach his fairness in the particular transaction, and these men place an excessive valuation upon the property so as to make $600 stand for $1,000, these are facts from which a purpose on the part of sheriff, judgment creditor and commissioners to make the judgment debtor pay the execution, regardless of his homestead rights, may be legitimately inferred.

The appraisement in the case is tainted with fraud, and the chancellor did right in nullifying the proceedings.

The decree is affirmed.